UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **SAMUEL C. WILLIAMS, IV**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-cv-1900 (TSC) |
| | ) | |
| **SMITHSONIAN INSTITUTION**, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the court is Defendant's Partial Motion to Dismiss (ECF No. 6), and Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 10). For the reasons set forth below, the court will grant Plaintiff's motion and grant Defendant's motion, in part. The court considers the facts alleged in the Amended Complaint in ruling on Defendant's motion.

## STATEMENT OF FACTS

Plaintiff Samuel C. Williams is African-American. He was formerly employed by Defendant, the Smithsonian Institution, as a Management and Program Analyst in the Systems Engineering Section of the Office of Facilities Management & Reliability (OFMR). When Plaintiff applied for the position, Smithsonian employee Enos Scragg required that Plaintiff take "two pre-employment tests, an Excel test and writing sample." (Amend. Compl. ¶¶ 10, 12). The vacancy announcement for the position did not indicate that any pre-employment tests were required. (*Id.* ¶¶ 13–14).

Once Plaintiff was hired, Scragg became his supervisor. Around the time he was hired, Plaintiff requested a copy of his test results, but Katherine Simenton, an employee in the Personnel Unit of the Business Operations Division of the OFMR, informed Plaintiff "that there were no tests required for his position." (Amend. Compl. ¶¶ 15–17; Defs. Ex. A, Simenton Aff. ¶ A2).

Later, while participating on an interview panel, Plaintiff observed Scragg ask a candidate if "he submitted a required test." (Amend. Compl. ¶¶ 18–19). The candidate "responded that since the test was not required per the vacancy announcement he was not going to submit the test." (*Id.* ¶ 20). After the interview "Scragg told the panel to remove the candidate's name from the selection pool." (*Id.* ¶ 21). Eventually, the position went to Tamia Rush, who told Plaintiff that she submitted only a writing sample. (*Id.* ¶¶ 22–24).

In late June, Scragg held Plaintiff responsible for a computer system error, even after the software builder determined that the error occurred outside of Plaintiff's control. (*Id.* ¶¶ 28–40). On or around June 27, 2013, Plaintiff complained to Simenton that Scragg had denied Plaintiff's requests for training. (*Id.* ¶ 25). Plaintiff also told Simenton about the computer system issue and complained that "Scragg was treating Plaintiff differently than his non-African-American coworkers." (*Id.* ¶¶ 26–27).

Plaintiff complained to Simenton again on July 9, 2013. (*Id.* ¶ 41.) Specifically, Plaintiff complained "that the disparity in job requirements was discriminatory based on Plaintiff's race." (*Id.* ¶ 41). Simenton responded that Scragg had been warned about using pre-employment tests because the practice was "outside OPM guidelines." (*Id.* ¶ 42). According to Plaintiff, Simenton told Scragg about Plaintiff's complaint and Scragg later called Plaintiff a "troublemaker." (*Id.* ¶

43). Approximately two weeks later, on or around July 23, 2013, Scragg terminated Plaintiff from his position. (*Id.* ¶ 44; Defs. Ex. A, Simenton Aff. ¶ A10). Plaintiff subsequently contacted an EEO counselor.

Plaintiff brings suit pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.* He alleges that the Smithsonian discriminated and retaliated against him, based on race, when it denied him training opportunities and terminated him.[1]

### III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Moreover, a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If the facts as alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted. *See,*

---

[1] In the section of Plaintiff's Amended Complaint entitled "Count II Retaliation," he asserts that he complained to the Smithsonian about alleged racial and <u>gender</u> discrimination. (Amend. Compl. ¶ 70) (emphasis added). Although not outcome determinative with respect to the motions presently at issue, the court notes that it is unable to find any factual allegations in the Complaint regarding gender discrimination.

*e.g.*, *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

### III. ANALYSIS

The court notes that Plaintiff's Amended Complaint is remarkably short on information that would normally be considered relevant in a racial discrimination claim.  For example, Plaintiff alleges that his supervisor Scragg (whose race is unspecified), discriminated against Plaintiff by, among other things, requiring him to take a pre-employment test.  *See Washington v. Chao*, 577 F. Supp. 2d 27, 42 (D.D.C. 2008) ("Although far from dispositive, the fact that [the selecting official] and Plaintiff are members of the same protected class is also a fact that "weighs against any inference of discrimination.'") (citing *Hammond v. Chao,* 383 F. Supp. 2d 47, 58 n. 2 (D.D.C. 2005), *aff'd,* 2006 U.S. App. LEXIS 13290 (D.C. Cir. May 22, 2006)). Plaintiff alleges that another prospective employee refused to take the test and was not considered for employment, but does not specify the prospective employee's race.  Plaintiff also alleges that yet another employee was hired without having to take the test but, similarly, does not give that employee's race.  Information regarding these individuals' race would be relevant to Plaintiff's claim, and the court assumes that Plaintiff possesses that information, but declines to present it.  Nonetheless, the Smithsonian has not based its challenge to Plaintiff's claims on this lack of information and, therefore, at this stage of the litigation, the court will consider only the arguments raised by the Smithsonian in its motion to dismiss.

The Smithsonian seeks partial dismissal of Plaintiff's complaint for two reasons.  First, the Smithsonian argues that Plaintiff failed to exhaust his administrative remedies with respect to

his claim for discrimination in training opportunities.  Plaintiff concedes this argument, and therefore, Plaintiff's failure to train claim will be dismissed.

Next, the Smithsonian argues that Plaintiff has not established a prima facie case for retaliation.  To establish a prima facie case for retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), a plaintiff must present evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took a "materially adverse" employment action against her; and (3) the adverse action was causally related to the exercise of her rights.  *Porter v. Shah*, 606 F.3d 809, 817–18 (D.C. Cir. 2010); *Holcomb v. Powell*, 433 F.3d 889, 901–02 (D.C. Cir. 2006) (citations omitted).  "Protected activity" includes opposing "any practice made an unlawful employment practice by" Title VII.  42 U.S.C. § 2000e-3(a); *see Crawford v. Metro. Gov't of Nashville & Davidson Cnty. Tenn.*, 555 U.S. 271 (2009).

The Smithsonian maintains that Plaintiff's retaliation claim fails because the activity that allegedly prompted retaliation against him was not "protected activity" within the meaning of the statute.  The Smithsonian alleges that, at the time of the incidents at issue, Simenton was not a supervisor, but instead was Plaintiff's co-worker.  (Defs. Ex. A, Simenton Aff. ¶ A6).  Because she was not a supervisor or manager, the Smithsonian argues that Plaintiff's complaints to her did not constitute "protected activity."  In support of this argument, the Smithsonian cites to several cases that are factually dissimilar to this case:  *Sumner v. U.S. Postal Serv.*, 899 F. 2d 203, 209 (2d Cir. 1990) (plaintiff complained to his supervisor about alleged discrimination and the court noted that protected activity includes "making complaints to management [and] writing critical letters to customers"); *McKenzie v. Gibson*, No. 07 Civ. 6714(WHP), 2010 WL 3528922, at *8 (S.D.N.Y. Aug. 24, 2010) (plaintiff complained to supervisor about alleged gender

Page **5** of **8**

discrimination and the court noted that protected activity includes "making complaints to management."); *Gleason v. Mesirow Financial, Inc.*, 118 F. 3d 1134, 1147 (7th Cir. 1997) (plaintiff complained "generally" about her supervisor's conduct to management, but "never reported her allegations of sexual harassment <u>during her term of employment with the defendant</u>.")(emphasis in original); *Johnson v. Heyman*, Civil Action No. 98-1860 DAR, 2000 U.S. DIST. LEXIS 12785 (Aug. 25, 2000)(plaintiff failed to provide legal authority for the proposition that complaints to co-workers constitute protected activity).

Neither party states what Simenton's title was at the time of the incidents in question, but it appears she was employed in the human resources ("HR") department.  (Am. Compl. ¶¶ 15-16, 46, 48).  Plaintiff alleges that "Simenton is a Supervisory Management/Program Analyst" in the OFMR, which appears to be the same division in which Plaintiff was employed.  (*See id.* ¶¶ 9, 17).   Plaintiff also alleges that Simenton "maintained an office within Plaintiff's work facility and had her own assistants and administrators under her direction."  (*Id.* ¶ 47).  Moreover, when he was hired, Plaintiff was told by his supervisor to go directly to Simenton "for any human resources-related issues, such as discrepancies in compensation, requests for leave and conflicts with co-workers and supervisors."  (*Id.* ¶ 46).  And on one occasion, "Simenton notified Plaintiff she would transmit Plaintiff's complaints of discrimination to his second-lever supervisor and other members of management."  (*Id.* ¶ 49).  Finally, Plaintiff alleges that Simenton told Scragg about Plaintiff's discrimination complaints.  (*Id.* ¶ 43).

Given the facts Plaintiff alleges, the court need not reach the issue of whether Simenton was a "manager" or "supervisor."  The court finds Plaintiff has pleaded sufficient facts to establish that he engaged in protected activity.  The Smithsonian has not pointed to any authority

that required Plaintiff to do anything other than what he had been instructed to do – take his complaints to Simenton.  Moreover, other courts have found that an employee engages in protected activity when he complains of discrimination to a co-worker who passes the complaint on to management:

> Case law has clarified that opposition to unlawful employment practices may take many forms, including "complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. United States Postal Service*, 899 F.2d 203, 209 (2d Cir. 1990).  In essence, a plaintiff alleging retaliation must show some form of opposition, <u>which is communicated to the employer</u>, followed by adverse action by the employer. . . . [T]he opposition to discriminatory practices need not be made directly to managers in order to constitute protected activity, a plaintiff's complaints to her co-workers, assuming they were communicated to management, would be the type of opposition to discrimination that § 2000e–3(a) seeks to protect. *Neiderlander v. Am. Video Glass Co.*, 80 Fed. Appx. 256, 259–261 (3d Cir. 2003).

*Crosby v. City of Walterboro, SC*, 444 F. Supp. 2d 559, 568 (D.S.C. 2006) (emphasis added) (some citations omitted); *see Mondaine v. Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 1190 (D. Kan. 2006) ("Plaintiff's complaints to her co-workers that everyone was prejudiced and that her supervisors were racist constitute 'protected activity' under Title VII and Section 1981 because those comments were passed on to management.") (citing *Neiderlander v. Am. Video Glass Co.,* 80 Fed. Appx. 256, 261 (3d Cir. 2003)); *Zowayyed v. Lowen Co.*, 735 F. Supp. 1497, 1504 (D. Kan. 1990)).  Thus, even if Simenton were a co-worker and not Plaintiff's supervisor or manager, Plaintiff's complaints to her were still sufficient to put the Smithsonian on notice because Plaintiff alleges that Simenton told him "she would transmit [his] complaints of discrimination to his second-level supervisor and other members of management."  (Am. Compl.

¶ 49). Therefore, Plaintiff's complaints to Simenton constituted protected activity, and the Smithsonian's motion to dismiss Plaintiff's retaliation claim will be denied.[2]

The Smithsonian argues that the court should deny Plaintiff's Motion for Leave to Amend his complaint because the proposed amendments are futile. The court disagrees and will, therefore, grant Plaintiff's motion.

### III. CONCLUSION

For the reasons set forth above, the court will grant Plaintiff's Motion for Leave to Amend the complaint. The court will grant the Smithsonian's motion to dismiss Plaintiff's failure to train claim as conceded, and will deny the Smithsonian's motion to dismiss Plaintiff's retaliation claim.

Date:  March 31, 2016

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[2] Since Plaintiff did not address the issue in his response and the outcome would not change under either rule , the court does not reach the question of whether to analyze this motion under the Rule 12(b)(6) standard or, because the Defendant relies on documents outside the pleadings, whether to analyze the motion under the Rule 56 standard.